UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW MEXICO

In re:
JOSEPH W. ROLLINGS and
JANET S. ROLLINGS,
    Debtors.                                                No. 7-07-11657 SL

CHASE MANHATTAN BANK, USA
    Plaintiff,
v.                                                       Adv. No. 07-1151 S

JANET S. ROLLINGS,
    Defendant.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**
**ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on Chase Manhattan Bank, USA's ("Plaintiff's") Motion for Summary Judgment (doc 21) with accompanying Affidavits (docs 22 and 23). Defendant Janet Rollings filed a response (doc 24), to which Plaintiff replied (doc 25). The Court has reviewed the materials on file and considered the arguments of the parties, and has consulted other materials and finds that the Motion is not well taken and should therefore be denied. This is a core proceeding. 28 U.S.C. § 157(b)(2)(I).

Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Bankruptcy Rule 7056(c). In determining the facts for summary judgment purposes, the Court may rely on affidavits made with personal knowledge that set forth specific facts otherwise admissible in evidence and sworn or certified copies of papers attached to the

affidavits. Fed.R.Civ.P. 56(e). When a motion for summary judgment is made and supported by affidavits or other evidence, an adverse party may not rest upon mere allegations or denials. Id. The court does not try the case on competing affidavits or depositions; the court's function is only to determine if there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). However, regardless of whether respondent answers the motion for summary judgment, the Court must still review the motion to determine whether Plaintiffs are entitled to judgment as a matter of law. See Bankruptcy Rule 7056(c).

In this case Plaintiff listed 10 facts it contended were not in dispute. Debtor admitted these 10 facts. However, as the parties agree, there is a legal question as to the interpretation of the facts, and therefore a question of who is entitled to judgment.

**UNDISPUTED FACTS**

1. This is a core proceeding over which this Court has jurisdiction under title 28 U.S.C. § 157(b).
2. Defendant is the Debtor in this chapter 7 case. Plaintiff is a creditor of Debtor.
3. On or about September 17, 2000, Debtor applied for and was given a credit card account, from Plaintiff, account number

XXXX XXXX XXXX 4202. As of April 6, 2007, the credit card account had a credit limit of $14,700.00.

4. On our about April 3, 2007, Debtor and her husband completed preparation and signed their 2006 income tax return, calculating their tax liability at $2,267.00.

5. Although their 2006 income tax return listed their daughter, Jolene Rollings as a dependent, their tax return omitted any claim for an Earned Income Credit under line item 66.

6. On or about April 6, 2007, Debtor made a cash advance from Plaintiff's credit card account payable to the United States Internal Revenue Service in the amount of $2,267.00. Plaintiff honored Debtor's cash advance according to the tenor of Debtor's instructions.

7. Debtor filed her bankruptcy proceedings on July 10, 2007.

8. Shortly after August 27, 2007, Debtor and her spouse received an IRS notification, confirming that the IRS had changed their account to correct their earned income credit, and that with the correction, Debtor and her spouse were entitled to a $2,747.00 credit, taking into consideration the $2,267.00 they submitted to the IRS in April 2007. The notification also enclosed the IRS check for $2793.14, inclusive of $46.14 interest accrued on debtor's payment.

9.  Upon receipt of the IRS refund, Debtor and her spouse transferred the check to the Chapter 7 Trustee as funds due to Debtor's bankruptcy estate.

10. No payments were made on Debtor's account concerning this cash advance, and the advance continues to be outstanding and unpaid. The parties stipulated that at the current applicable interest rate on Debtor's account, the balance, if due from Debtor, as of her July 10, 2007 bankruptcy filing date would be $13,198.89, with interest continuing to accumulate from that date at the card rate of 29.99 percent per annum. The Court refuses to accept this fact. The bankruptcy was filed a little over three months after the cash advance. It is not possible for a $2,267.00 debt to accrue $10,931.89 of interest in three months, or even a year and a half (measured from the date of the advance to the date of the filing of Sundra Williams' affidavit – doc 23), at 29.99% interest. Rather, it would appear that Ms. Williams has put into the affidavit (Paragraph 4) the entire balance of the account as of the petition date. Therefore, the Court would have required a further accounting should it have awarded to Plaintiff a judgment in this adversary proceeding.

**THE STATUTE**

The relevant statute is 11 U.S.C. § 523(a)(14), which states:

> (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt--
> ...
> (14) incurred to pay a tax to the United States that would be nondischargeable pursuant to paragraph (1).

Paragraph (1) of section § 523(a) makes nondischargeable certain tax debts accrued within certain periods of time before a bankruptcy filing. The question is whether the tax in this case would have been a § 523(a)(1)(A) nondischargeable tax, or perhaps more accurately, whether there was a tax at all in this case.

**CONCLUSIONS OF LAW**

Plaintiff argues that Debtor's behavior fits squarely within the statute: she incurred a debt to Plaintiff and used the proceeds to pay a federal tax debt (of the kind) that would have been nondischargeable. Plaintiff argues that the analysis should stop at that point, but provides five reasons that, even if the refund is considered, the debt should still be nondischargeable. Debtor, on the other hand, argues that there was no debt because the IRS later returned the income tax payment to them and they turned it over to the trustee. She also argues that the cash advance was more than 90 days before the bankruptcy filing, and that there was no allegation of an intent to defraud Plaintiff. The Court will address Debtor's arguments and then Plaintiff's arguments.

Page -5-

Taking Debtor's arguments in reverse order, intention is not relevant in a § 523(a)(14) analysis. See MBNA America v. Parkhurst (In re Parkhurst), 202 B.R. 816, 820 (Bankr. N.D. N.Y. 1996) (only element to prove in a § 523(a)(14) case is that monies were used to pay off a nondischargeable income tax liability). Also compare, e.g. § 523(a)(2)(B)(iv) (creditor must prove debtor's "intent to deceive" to prevail on false financial statement claim); also compare § 548(a)(1)(A) ("made such transfer ... with actual intent to hinder, delay or defraud...") with § 548(a)(1)(B) (no intent to hinder, delay or defraud requirement). Similarly, § 523(a)(14) has no time limit during which the debt must have been incurred. Compare § 523(a)(2)(C)(I) (debts aggregating more than $500 owed to a single creditor incurred on or within 90 days before the bankruptcy filing are presumed nondischargeable). If Congress intended there to be a time period element to when a § 523(a)(14) debt must be incurred it would have included one in the statute.

Debtor's final argument, that there was no debt, is more difficult to address. The statute makes nondischargeable credit card debts "incurred to pay a tax...that would be nondischargeable...." Debtor really argues that there was no tax debt, so it was impossible for her to incur a debt to pay a non-

existent tax and therefore § 523(a)(14) does not apply.[1]
Unquestionably Debtor incurred a debt to Plaintiff to make a
payment to the IRS, but was it a tax, or if so, "would [it] be
nondischargeable"?

Our tax system is based upon a self-assessment system. G.M.
Leasing Corp. v. United States, 429 U.S. 338, 350 (1977)
(acknowledging our self-assessment tax system.)  "Once the tax is
assessed, the taxpayer will owe the sovereign the amount when the
date fixed by law for payment arrives." Bull v. United States,
295 U.S. 247, 259 (1935). "The assessment is given the force of
a judgment, and if the amount assessed is not paid when due,
administrative officials may seize the debtor's property to
satisfy the debt." Id. at 260.  The date that self-assessed
income taxes are due is the last date fixed for filing the return
(determined without regard to any extension of time for filing
the return).  26 U.S.C. § 6151(a) and 6072(a); United States v.
Ressler, 433 F.Supp. 459, 463 (S.D. Fla. 1977), aff'd., 576 F.2d
650 (5th Cir. 1978), cert. denied, 440 U.S. 929 (1979).  In this
case, that date was April 15, 2007 for the Debtors' calendar year
2006 return. See 26 U.S.C. § 6072(a).

However, Bull v. United States and United States v. Ressler
have as an underlying assumption that the taxpayer actually owes

---

[1] "The fact is, there is no non-dischargeable debt because there is no debt." Doc 24 at 2.

a debt – a net obligation – to the government.  <u>United States v. Bull</u>, 295 U.S. at 259 ("[T]he sovereign has an enforceable claim against every one within the taxable class <u>for the amount lawfully due from him</u>."  Emphasis added.); <u>United States v. Ressler</u>, 433 F.Supp. at 460 ("Defendant Ressler does not contest the merits of the various assessments, and has conceded that the tax assessments against him are correct and valid.").[2]  In consequence, the case law and filing procedures set out above do not lead to the conclusion that Debtor owed a debt; rather, that Debtor owed a debt is an assumption in the procedural analysis.  The mere fact therefore that Debtor filed a tax return that on its face showed that she and her husband were obligated to the United States cannot by itself constitute the basis for finding that there was any obligation, much less that the obligation was "a tax to the United States that would be nondischargeable pursuant to paragraph (1)."

The Court finds that on April 15, 2007 the Debtors did not owe the amount reported on their income tax return.  Therefore, the Court finds that there was no tax due as described by § 524(a)(14) when Debtors made the payment, albeit the payment was

---

[2] For this reason, cases such as <u>American Centurion Bank, Optima Account v. Gavin</u>, 248 B.R. 464 (Bankr. M.D. Fla. 1999) are inapposite, since in those cases debtor did owe the tax in question.

Case 07-01151-s    Doc 27    Filed 02/12/09    Entered 02/12/09 14:40:11 Page 8 of 12

made with the proceeds of the debt incurred.[3]  At a minimum, the payment was not nondischargeable under § 523(a)(1); any attempt by the IRS to hold the debt nondischargeable would fail.

Plaintiff's arguments do not suffice to change this conclusion.  Doc 21, at 4-6.  Plaintiff first argues that Debtor and her husband are bound by their characterization in their tax return that they in fact owed a debt to the government.  Plaintiff provides no case or statutory support for the proposition.  More to the point, however, is that Debtor's mistaken "admission" that she and her husband owed a debt to the government does not make it a fact that they did.  The government's subsequent correction of their mistaken filing demonstrates that no debt was owed.

In a related vein, the Court disagrees with Plaintiff's conclusion drawn from the literal wording of § 523(a)(14).  Plaintiff succinctly argues that "because defendant's debt was admittedly 'incurred to pay a tax to the United States,', and that tax was of the sort that 'would be nondischargeable under paragraph 1,' the defendant's debt should be likewise nondischargeable."  Plaintiff's Reply at 2 (doc 25).  By itself

---

[3] Plaintiff has not alleged that Debtor paid the tax with a credit card expenditure, knowing that no tax was owed, for the purpose of obtaining a refund at the expense of Plaintiff.  Such an action might constitute fraud pursuant to § 523(a)(2).  In this instance, Debtor immediately turned the entire refund, including the $480 which exceeded the credit card charge, over to the chapter 7 trustee.

Plaintiff's construction of the statutory language is quite reasonable, and the argument certainly has a surface plausibility. However, the Court has the obligation to interpret the statute holistically. United Savings Assoc. of Texas v. Timbers of Inwood Forest Assoc., Ltd., 484 U.S. 365, 371 (1988). And consistent with the obligation to construe the Code "liberally in favor of the debtor and strictly against the creditor", Gullickson v. Brown (In re Brown), 108 F.3d 1290, 1292-93 (10th Cir. 1997) (discharge action), the Court reads into the language of the statute the requirement that the term "tax" include the notion of a debt owed to the United States. This interpretation would also be consistent with the obvious purpose of the statute; to wit, to deal with debtors who would convert nondischargeable tax debt into otherwise dischargeable credit card debt, to the creditor's detriment. American Express Centurion Bank v. Gavin, 248 B.R. at 465.

Second, as stated above, Debtor's intent is completely irrelevant to the issue. It is irrelevant for a creditor as well.

Third, Plaintiff's argument that Debtor is the proper party to be assigned the risk of an adverse result, while creative, is irrelevant. To begin with, while it is true that once Debtor used the credit card to make the payment (and the payment was processed by Plaintiff), Plaintiff lost any ability to protect

its own interests, that is true with respect to any instance in which Debtor used the card.  Plaintiff really lost control not so much when this payment was made but when it issued the card and allowed Debtor to use it.  In addition, the Court is governed by what the statute says.  E.g., Lamie v. United States Trustee, 540 U.S. 526, 534 (2004) ("[W]hen the statute's language is plain, the sole function of the courts ... is to enforce it according to its terms."  Internal punctuation and citation omitted.).  The statute does not call for the Court to analyze where the liability should fall, but merely to do what the statute says.  And in any event, merely because the funds went to the trustee at the expense of the creditor is not a reason to make a debt nondischargeable.  Otherwise, debts such as those arising from the trustee's recovery of preferential transfers would be candidates for nondischargeability also.

Fourth, while "claims are set as of the [petition] date", the determination of what claims are actually owed is a process that takes place postpetition.  Indeed, sorting out claims and determining their validity is at the core of the bankruptcy process.

Fifth, it is probably true that if the government had not issued a refund, Debtor would continue to be liable for the debt, unless Debtor proved she did not owe the debt on the payment date even if she did not receive a refund.  But those are not the

Case 07-01151-s    Doc 27    Filed 02/12/09    Entered 02/12/09 14:40:11 Page 11 of 12

facts of this case, which include a government refund that proves that there was no debt owed to the government.

Therefore, the Court finds that the debt owed to Plaintiff is dischargeable in Debtor's bankruptcy.

**CONCLUSION**

The Court finds that Plaintiff's motion for summary judgment is not well taken and should be denied. Judgment will be issued in favor of Debtor and against Plaintiff[4].

_____
Honorable James S. Starzynski
United States Bankruptcy Judge

Date Entered on Docket: February 12, 2009

copies to:

Kelly Albers
Attorney for Plaintiff
Law Office of Kelly P. Albers, P.C.,
650 Montana Ave Ste D
Las Cruces, NM 88001-4294

Kieran F Ryan
Attorney for Defendant
Ryan Law Office
PO Box 26
Las Cruces, NM 88004-0026

---

[4] Defendant did not file her own motion for summary judgment. However, when one party moves for summary judgment and the non-movant is entitled to judgment on those same facts it is proper for the Court to enter summary judgment for the non-movant sua sponte. See Coach Leatherware Co., Inc. v. Ann Taylor, Inc., 933 F.2d 162, 167 (2nd Cir. 1991); Aviation Development Co. PLC v. C & S Acquisition Corp., 1999 WL 123718, *2 (S.D.N.Y. 1999).

Page -12-